UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BAV AUTO, L.L.C, ) | Case No. 22-17933-JKS |
| ) | Chapter 11, Subchapter V |
| Debtor. ) | |
| ) | |

**OBJECTION OF AUTOMOTIVE FINANCE CORPORATION TO
DEBTOR'S MOTION TO SELL ASSETS FREE AND CLEAR OF LIENS**

Automotive Finance Corporation ("AFC"), by counsel, submits its objection to the motion of BAV Auto, L.L.C. ("BAV") for authority to sell its vehicle inventory free and clear of liens pursuant to 11 U.S.C. § 363(f) [DE 53] (the "Motion").[1] In support of its objection, AFC states as follows:

**I. Jurisdiction And Venue**

1. The Court has jurisdiction over the Motion and this Objection pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure, and a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), (M), and (N).

3. Venue of this bankruptcy case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**II. General Background**
**a. Procedural History**

4. On October 6, 2022, BAV filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code.

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C. §§ 101—1532 (the "Bankruptcy Code").

5.  On January 4, 2023, together with Alexandre J. Dacosta and Vivianne C. Antunes, joint debtors in Subchapter V Case No. 22-18303-JKS, BAV filed its *Small Business Debtors' Joint Plan of Reorganization* (the "Plan") [DE 40]. Pursuant to the Plan, BAV seeks authority to sell its vehicle inventory free and clear of liens.

6.  BAV is no longer operating and has not operated since its Subchapter V case was commenced.

### b. Basis For AFC's Interest

7.  On or about January 9, 2019, BAV executed a Demand Promissory Note and Security Agreement (as amended or modified from time to time, the "Note"), pursuant to which BAV promised to pay AFC $450,000.00, or such greater or lesser principal amount as may be advanced by AFC pursuant thereto, together with interest. A true and accurate copy of the Note is attached as **Exhibit 1**.

8.  Under the terms of the Note and to secure BAV's present and future obligations to AFC under that note and any other instrument, guaranty, or other document, BAV granted AFC a security interest in substantially all of its assets, including inventory, then owned or thereafter acquired. Under the terms of the Note and to secure BAV's present and future obligations to AFC under that note and any other instrument, guaranty, or other document, BAV also granted AFC a purchase money security interest in all vehicles, parts, and equipment financed by AFC thereunder. AFC properly perfected and maintained its security interests in the assets of BAV by making the appropriate UCC filings with the UCC Section of the Department of Revenue for the State of New Jersey. True and accurate copies of AFC's UCC filings are attached as **Exhibit 2**.

9.  In order to maintain priority in vehicles it financed directly under the Note, Article 9 of New Jersey's Uniform Commercial Code (the "UCC") required AFC to perfect its

purchase money security interest and send notice to the holders of conflicting security interests. N.J.S.A. § 12A:9-324(b). At the time the Note was executed, only Manheim Automotive Financial had filed a UCC-1 financing statement asserting a security interest in BAV's assets. To that end, on or about April 4, 2013, AFC sent a letter to Manheim notifying it that AFC had or expected to acquire a purchase money security interest in BAV's collateral. A copy of that letter, together with Manheim's acknowledgement of receipt, is attached as **Exhibit 3**.

10. By virtue of the Note and AFC's compliance with the UCC, AFC asserts a properly perfected, first priority purchase money security interest in the Secured Vehicle, and a properly perfected security interest in all other assets of BAV, including vehicle inventory financed by other lenders, the priority of which is uncertain.

11. Prepetition, BAV requested that AFC advance it money and/or extend it credit under the Note to finance the purchase of vehicle inventory, and AFC in fact advanced money to BAV and/or extended BAV credit under the Note for that purpose. Neither BAV nor the guarantors paid all amounts due and owing to AFC under the Note, and BAV was and is in default thereunder.

12. The amount due and owing from BAV to AFC under the Note is approximately $437,938.90, an amount that largely arises from BAV's sale out of trust of vehicles financed by AFC under the Note.

13. According to BAV, it remains in possession of one vehicle purchased by BAV and financed by AFC under the Note: a 2011 Infiniti M37 (the "Secured Vehicle").

14. On December 15, 2022, AFC filed proof of claim no. 11 in the BAV case asserting a claim in the amount of $437,938.90 secured by all assets of BAV. No objection has been asserted to this claim.

15. Under the Plan, AFC has been classified with a Class 6 secured claim and a Class 14 unsecured claim. AFC has submitted ballots in both classes voting against the Plan.

### c. The Sale Motion

16. In addition to its floorplan relationship with AFC, BAV had lending relationships with several other floorplan lenders and BAV's vehicle inventory is comprised of 35 vehicles financed by AFC and other lenders. BAV seeks authority to sell those vehicles free and clear of liens pursuant to Section 363(f) for an amount that is not sufficient to satisfy all of the liens on those vehicles. Liens will attach to the proceeds of the sale, and it appears that secured creditors will be paid after payment of the costs of sale, including the fees of BAV's bankruptcy counsel. Motion, at ¶ 22.

### III. Basis For AFC's Objection

17. BAV acknowledges that the proposed sale price (before allowed deductions) "is not greater than the aggregate value of all liens" on the vehicle inventory.[2] Accordingly, the sale may not be authorized under Section 363(f)(3). Instead, BAV seeks approval to liquidate its vehicle inventory under Sections 363(f)(2) and (4).

18. AFC does not consent to the relief requested in the Motion, and the sale may not be authorized under Section 363(f)(2).

19. The basis for BAV's request for authority to proceed under Section 363(f)(4) is the assertion that a bona fide dispute exists regarding the validity of AFC's lien perfection. It is not sufficient, however, to simply assert that a dispute exists. Instead, under Section 363(f)(4), a court must assess "'whether there is an objective basis for either a factual or legal dispute as to

---

[2] BAV is seeking to sell its vehicle inventory for $125,000; without regard to the claims of other lenders, AFC's claim is $437,938.90 and is secured by BAV's entire vehicle inventory. As a discrete part of the sale, BAV is seeking to sell the Secured Vehicle for $5,000; the amount due and owing to AFC on that vehicle is approximately $9,112.35.

4

the validity of the asserted interest.'" *In re NJ Affordable Homes Corp.*, Case No. 05-60442 (DHS), 2006 Bankr. LEXIS 4498, at *41 (Bankr. D.N.J. Jun. 29, 2006) (quoting *In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996)). It is the debtor's burden to introduce evidence to establish the validity of the dispute, which "entails 'some sort of meritorious, existing conflict.'" *Id*. (citations omitted).

20. BAV concedes that AFC filed a UCC-1 financing statement asserting a blanket lien in BAV's assets, including its vehicle inventory. Motion, at ¶ 16. BAV argues, however, that AFC's financing statement is deficient because it does not particularly identify each vehicle. BAV also questions the validity of AFC's method of perfection (i.e., by filing under the Uniform Commercial Code), and argues that perfection of an interest in motor vehicles must be done in accordance with New Jersey's Motor Vehicle Certificate of Ownership Law. *Id*. Both arguments raise straightforward questions of law under regarding the interpretation of New Jersey statutes, and neither is a "bona fide dispute" that justifies the sale of AFC's collateral over its objection.

21. The Motion also does not provide any mechanism for AFC to credit bid its claim under Section 363(k). This provides an independent basis to deny the Motion.

**a. The Collateral Descriptions In AFC's Security Agreement And Its Financing Statement Are Sufficient To Cover BAV's Vehicle Inventory, And The UCC Does Not Require A Financing Statement To Particularly Identify Each Item Of Inventory**

22. There can be little doubt that BAV's vehicle inventory is "inventory" as defined in the UCC. In fact, BAV uses that term almost 30 times in the Motion and the UCC confirms this understanding.

23. Under the UCC, "goods" are "all things that are moveable when a security interest attaches." N.J.S.A. § 12A:9-102(a)(44). While there are several exceptions in that statute that do not apply in this case, the term includes motor vehicles. *See*, *e.g.*, *World Bus. Lenders, LLC v.*

5

*Barry (In re Barry)*, 559 B.R. 654, 661 (Bankr. M.D. Pa. 2016) (under the UCC the term "goods" includes motor vehicles); *Dean v. Carr (In re Dean)*, Case No. 2012 Bankr. LEXIS 4566, at *7 (Bankr. M.D. Pa. Oct. 1, 2012) (same).[3]

24. "Inventory," in turn, is defined as "goods, other than farm products, which: (A) are leased by a person as lessor; (B) are held by a person for sale or lease or to be furnished under a contract of service; (C) are furnished by a person under a contract of service; or (D) consist of raw materials, work in process, or materials used or consumed in a business." N.J.S.A. § 12A:9-102(a)(48).

25. BAV is a car dealership that owned motor vehicles and sold them to its customers. Motion, at ¶ 9. *See also* Plan, at § 1.2 ("BAV utilized various floorplan lenders to purchase vehicles at auction to maintain its inventory and meet the vehicle demands of its customers. The floorplan lenders would be paid at the time a vehicle was sold and the lender would thereafter release the title to the vehicle to the debtor."). Accordingly, based on the plain language of the UCC and BAV's own assertions, BAV held its vehicle inventory for sale to customers and those vehicles are "inventory" under the UCC. *See Auto. Fin. Corp. v. DZ Motors, LLC*, Case No. 16-7955 (MAS), 2021 U.S. Dist. LEXIS 69915, at * 28 (D.N.J. Apr. 9, 2021) (determining that vehicles owned by an automobile dealership and held for sale to its customers were inventory under New Jersey's UCC). As a result, if BAV granted AFC a security interest in inventory and AFC properly perfected that security interest, there can be no bona fide dispute about the validity of AFC's lien.

26. BAV asserts that AFC did not properly perfect its lien in BAV's vehicle inventory because it did not particularly identify each vehicle in its financing statement. This is not

---

[3] The definition of "goods" under the Pennsylvania UCC is, with the exception of formatting differences, identical to the definition found in New Jersey's UCC. *See* 13 PA. C.S. § 1902(a).

required by the UCC. Although not specifically addressed in the Motion, this raises two issues: the sufficiency of the collateral description in the security agreement between BAV and AFC, and the sufficiency of the collateral description in AFC's financing statement.

27. Section 108 of the UCC provides that a collateral description in a security agreement is "sufficient, whether or not it is specific, if it reasonably identifies what is described." N.J.S.A. § 12A:9-108(a). The statute includes "examples of reasonable identification," such as "specific listing," "category," and "a type of collateral defined in the Uniform Commercial Code." N.J.S.A. § 12A:9-504(b)(1), (2), (3). The collateral description in the Note, which includes the security agreement between BAV and AFC, defines Collateral as

> all of [BAV's] assets and properties wherever located, including without limitation: (a) accounts, chattel paper, deposit accounts, documents, equipment, fixtures, **inventory**, and other goods, general intangibles, instruments, insurance policies, investment property, letter of credit rights, money, software, supporting obligations, all Titles, all of the foregoing now owned or hereafter acquired by [BAV]; (b) any and all proceeds, products, additions, accessions, accessories, and replacements of the foregoing; (c) all of [BAV's] computer records, business papers, ledger sheets, files, books, and records relating to the foregoing, now owned or hereafter acquired; and (d) the following:

Ex. 1, Note, at § 1.6 (emphasis added). Pursuant to the Note, BAV granted AFC "a lien and security interest in all of the Collateral." *Id.*, at § 3.0. Under Section 9-108 of the UCC, the collateral description in the Note was sufficient to grant AFC a security interest in BAV's vehicle inventory.

28. Similarly, under Section 9-504 of the UCC, a "financing statement sufficiently indicates the collateral that it covers if the financing statement provides: (1) a description of the collateral pursuant to 12A:9-108; or (2) an indication that the financing statement covers all

7

assets or all personal property." N.J.S.A. § 12A:9-504. In this case, AFC's financing statement covers the following collateral:

> all of [BAV's] assets and properties wherever located, including without limitation: (a) accounts; chattel paper; deposit accounts; documents; equipment, fixtures, **inventory**, and other goods; general intangibles; instruments; insurance policies; investment property; letter of credit rights; money; software; supporting obligations; and titles, now owned or hereafter acquired by [BAV], (b) any and all proceeds, products, additions, accessions, accessories, and replacements of the foregoing, and (c) all of [BAV's] computer records, business papers, ledger sheets, files, books, and records relating to the foregoing, now owned or hereafter acquired.

Ex. 2, UCC-1. Just as the description in the Note was sufficient to grant AFC a security interest in BAV's vehicle inventory, the collateral description in AFC's financing statement was sufficient to perfect that interest.

29. Any other outcome would ignore the plain language of the UCC and subvert its notice function, which numerous courts have recognized is intended to require "'adequate public notice' of liens and security interests." *First Midwest Bank v. Reinbold (In re I80 Equip., LLC)*, 938 F.3d 866, 872 (7th Cir. 2019). This, of course, assumes that filing a financing statement is the appropriate method of perfecting a security interest in inventory, which the UCC makes clear it is.

### b. The *Only* Way to Perfect a Security Interest in Motor Vehicles That Are Inventory Under the UCC Is By Filing a Financing Statement

30. As a result of the grant language and the collateral description in the Note, AFC asserts a blanket lien in substantially all of BAV's assets, including its vehicle inventory. AFC perfected its security interest by filing a UCC-1 financing statement and timely continued its perfection by filing a continuation statement. BAV disputes this method of perfection, arguing that "typically the sole method for perfecting a security interest in a motor vehicle is by delivery

to the Commissioner of Motor Vehicles the existing certificate of title or the acceptance of the NJ Universal Title Application containing the name and address of the lienholder and the required fee." Motion, at ¶ 16. While that may be typical (and required) in consumer transactions concerning motor vehicles, it is not the law that governs commercial transactions.

31. A security interest in a motor vehicle can be perfected in one of two ways in New Jersey: in accordance with the Motor Vehicle Certificate of Ownership Law (the "MVCO", N.J.S.A. §§ 39:10-1—38), or in accordance with Article 9 of the Uniform Commercial Code. BAV and AFC disagree about which statute controls in this case. The plain language of those statutes favors AFC's interpretation.

32. Pursuant to the MVCO, if a security interest is taken by a person who makes an advance and gives value to enable a purchaser to acquire rights in a used motor vehicle, the name and the business or residence address of the secured party or his assignee shall be noted on the certificate of ownership. N.J.S.A. § 39:10-9. This is the "typical method" BAV refers to in the Motion and the UCC recognizes this, providing that perfection by filing under the UCC is "not necessary or effective to perfect a security interest in property subject to" the MCVO. N.J.S.A. § 12A:9-311(a)(2). What BAV ignores, however, is that its vehicle inventory is not "subject to" the MCVO, and that both of these statutes contain explicit exceptions for motor vehicle inventory.

33. The MCVO provides that, "Nothing in this section shall apply to security interests in motor vehicles which constitute inventory held for sale, but such interests shall be subject to chapter 9 of Title 12A of the New Jersey Statutes." N.J.S.A. § 39:10-9. The UCC, in turn, confirms this exception and provides that, "During any period in which collateral subject to a statute specified in subsection (a)(2) [the MCVO] is inventory held for sale or lease by a person

9

or leased by that person as lessor and that person is in the business of selling goods of that kind, this section does not apply to a security interest in collateral created by that person." N.J.S.A. § 12A:9-311(d).

34. As already discussed, BAV's vehicle inventory is "inventory" under the UCC and BAV is a dealer that holds its vehicle inventory for sale and is in the business of selling those vehicles. Accordingly, the only way to properly perfect a security interest in BAV's vehicle inventory is in accordance with the UCC. N.J.S.A. § 12A:9-310(a) ("a financing statement must be filed to perfect all security interests and agricultural liens"). Because AFC perfected its security interest in BAV's vehicle inventory by filing a financing statement in accordance with the UCC, there is no objective basis to question the validity of AFC's lien and its collateral should not be over its objection while this "dispute" is resolved.

35. This is especially true in a case where the stated urgency of the sale is the Debtor's efforts to reorganize under a pending Subchapter V plan. Motion, at ¶¶ 15 ("If the Debtor is not able to sell the vehicles, the Debtor's chances on successful reorganization will be impossible."), 16 ("Quickly disposing of the vehicle inventory is necessary to avoid further depreciation of the assets and it will allow for a lump cash infusion into the Debtor's case which will allow the payment of initial disbursements pursuant to any confirmed joint plan of reorganization and to commence payment to its creditors on their allowed claims, including administrative expenses, professional and United States Trustee's fees."). The Debtor is not attempting to reorganize; it is liquidating the last of its collateral and has not operated since this Subchapter V case was commenced and will not operate in the future. With respect to the Plan, the United States Trustee, AFC, and Westlake Flooring Company, LLC have all submitted objections and it is unclear whether the Plan will ever be confirmed.

10

36. Because there is no objective basis for either a factual or legal dispute as to the validity of AFC's security interest in BAV's vehicle collateral, and BAV's stated reasons for urgency do not overcome the protections Section 363 is intended to provide, the Motion should be denied.

### c. The Motion Does Not Provide For Credit Bidding Under Section 363(k)

37. Section 363(k) provides, "At a sale under subsection (b) of this section or property that is subject to a lien that secured an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property."

38. AFC filed a proof of claim asserting a secured claim against BAV in the amount of $437,938.90. No objection has been asserted to this claim.

39. As previously explained, by virtue of the grant in the Note and the collateral description in AFC's financing statement, AFC has a properly perfected security interest in all of BAV's vehicle inventory, whether it was owned at the time BAV executed the Note or was later acquired. As a result, unless the Court orders otherwise (which BAV has not requested and the Court has not ordered), AFC has the right under Section 363(k) to credit bid its entire claim at the proposed sale. Importantly, this right extends not only to the Secured Vehicle which AFC financed directly, but to BAV's entire vehicle inventory, including vehicles financed by other lenders.

40. Because the Motion does not provide for this protection, it may not be granted.

## IV. Conclusion

41. For the foregoing reasons, AFC objects to the Motion.

Dated: January 31, 2023          /s/ *Donna L. Thompson, Esq.*
                                 DONNA L. THOMPSON
                                 Attorney for Plaintiff
                                 *PHYSICAL ADDRESS:*
                                 1442 Lakewood Road
                                 Manasquan, NJ  08736
                                 *SEND ALL MAIL:*
                                 PO Box 679
                                 Allenwood, NJ  08724
                                 732-292-3000 Phone
                                 732-292-3004 Fax
                                 Donna.thompson@dlthompsonlaw.com